SHARP PAPER & SPECIALTY Co., INC., demandante y apelada, v. GASPAR FERNÁNDEZ, demandado y apelante.

Núm. 8426.—*Sometido:* Mayo 21, 1942. *Resuelto:* Julio 8, 1942.

658

*Villamil & Santana Becerra,* abogados del apelante; *Dubón & Ocho-teco* y *Otero Suro & Otero Suro,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Se trata del cobro en esta Isla de una cantidad ordenada pagar por cierta sentencia en rebeldía dictada por el secretario de una corte de justicia del estado de Nueva York, Estados Unidos de América.

La demanda fué entablada por Sharp Paper & Specialty Co., Inc., una corporación organizada de acuerdo con las leyes del estado de Nueva York, domiciliada en la ciudad del mismo nombre, contra Gaspar Fernández, vecino de San Juan, Puerto Rico, alegando que el 17 de septiembre de 1932, en el caso 37714 por ella seguido contra el aquí demandado en la Corte Suprema del Estado de Nueva York para el Condado de Nueva York, Estados Unidos de América, que es una corte de récord, se dictó sentencia, que es firme, condenando al demandado a pagar a la demandante $2,734.48 de principal, intereses sobre los mismos y $21.60 por costas y desembolsos, copia de cuya sentencia se une a la demanda, y que dicha sentencia no ha sido pagada en todo ni en parte, no obstante las gestiones de cobro realizadas por la demandante. La demanda está jurada.

Emplazado, el demandado contestó. Negó la existencia de la sentencia invocada y alegó que de existir, sería nula, porque nunca fué notificado en el procedimiento ni tuvo conocimiento del mismo hasta que se le emplazó en este pleito. Alegó varias defensas especiales.

Fué el pleito a juicio. Se presentó evidencia testifical y documental y el 26 de diciembre de 1940 la corte dictó sen-

tencia condenando al demandado a pagar a la demandante la suma de $2,734.48, intereses al seis por ciento anual sobre la misma desde septiembre 17, 1932, hasta su pago, $21.60 por costas y desembolsos en el pleito en que recayó la sentencia base de la acción, $100 de honorarios de abogado y las costas.

No conforme, el demandado interpuso el presente recurso de apelación, señalando ocho errores como cometidos por la corte sentenciadora al admitir en evidencia cierta deposición; al resolver que la demandante había probado su caso y que no podía tomar conocimiento judicial de las leyes del estado de Nueva York; al sostener que el secretario de la Corte Suprema de Nueva York tenía facultad para dictar la sentencia que dictó; al decidir que el demandado fué de hecho personalmente emplazado; al sostener que el emplazamiento que aparece en el *judgment roll* era válido y en general la validez de los procedimientos, y al incluir en la sentencia intereses al seis por ciento anual desde la fecha del registro de la sentencia de Nueva York, 1932.

Al comenzar el juicio la demandante ofreció en evidencia el *judgment roll* del caso número 37314–1932 de la Corte Suprema del Estado de Nueva York para el Condado de Nueva York, y fué admitido sin objeción.

Llamó entonces a declarar a José Luis Hernández, secretario de la corte, quien reconoció cierto documento que se le presentara como una comisión expedida en este caso nombrando a Leonard R. Hanower, de Nueva York, para tomar testimonio a Bernard Sharp, de la misma ciudad, incluyendo el interrogatorio, el contrainterrogatorio y las contestaciones. El demandante ofreció entonces en evidencia el documento y el demandado se opuso porque en vez de un sobre cerrado se presentaba un documento abierto. Explicó el secretario que recibió en efecto el documento en un sobre cerrado y lacrado que abrió, uniendo a los autos su contenido. El sobre desapareció.

La corte admitió la deposición con la excepción del demandado, que consignó en récord que se oponía además porque "...del documento en sí no aparece que el mismo venga debidamente legalizado ya que en ninguna parte aparece que la persona que toma la deposición, Hanower, sea un funcionario autorizado para tomar juramentos en New York, ni tampoco hay un sello de esa persona ni su firma viene a la vez legalizada por el Secretario de Estado o el County Clerk de la Corte Suprema del Estado de Nueva York, que son las personas que legalizan las firmas..."

Siguió una discusión entre las partes, y la corte decidió el incidente como sigue:

"Entiende el tribunal que tal y como fué resuelto por el Tribunal Supremo en el caso de *Hermida & Palos* v. *Gestera,* 23 D.P.R. 101 y el hecho de que la comisión expedida por esta Corte y dirigida al comisionado nombrado señor Leonard R. Hanower fué devuelta a la Secretaría de esta Corte y firmada por dicho comisionado, es suficiente identificación a los fines de admitir la misma y esto también ha sido resuelto y lo sostiene la jurisprudencia de California en 9 Cal. Jurisprudence 420 y siendo ello así se declaran sin lugar las objeciones y se admite el documento ya marcado *Exhibit* Núm. 2 de la demandante."

La comisión se confirió en efecto dentro de este pleito por la corte de distrito a Leonard R. Hanower, 58 West, 40th Street, New York City, a quien se nombró para tomar declaración a Bernard Sharp, 220 Fifth Avenue, New York City, y se envió acompañada del interrogatorio y del contrainterrogatorio. El testimonio aparece tomado por Hanower en Nueva York en agosto 19, 1940. El testigo lo leyó, firmó y juró ante el comisionado, según éste, bajo su firma, certifica. No hay sello.

A nuestro juicio, aunque llama la atención la falta de sello y hubiera sido mejor que el secretario de la corte hubiera preservado el sobre dentro del cual recibió la documentación unido a ésta, no creemos que la corte errara al admitir la deposición en evidencia.

Expresamente dispone el artículo 500 del Código de Enjuiciamiento Civil, ed. 1933, que es el 138 de la Ley de Evidencia de 1905, que si la comisión para tomar la deposición de un testigo fuese expedida para cualquier punto de los Estados Unidos, podrá dirigirse a una persona aceptada por las partes, y en caso contrario, a cualquier magistrado, juez de paz o comisionado elegido por el tribunal o juez que la hubiere expedido. Disponiendo además el artículo 502 del propio Código que el comisionado certificará la deposición para el tribunal, dirigiéndola en un sobre sellado, por correo o cualquiera otro conducto ordinario, al secretario del mismo.

No exige la ley mayor autenticidad. Y es que existiendo una relación previa entre la corte y el comisionado, la situación que se crea es distinta a la en que se encuentra un documento notarial cualquiera otorgado en algún estado o territorio de la Unión que aisladamente se presenta en una corte de Puerto Rico.

Los señalamientos segundo y tercero se argumentan conjuntamente. Por ellos, como hemos indicado, se sostiene que la corte sentenciadora erró al resolver que la demandante había probado todos los extremos de su demanda y por ende que la sentencia de Nueva York era final y firme al comenzarse este pleito, y que dicha corte erró también al resolver que no podía tomar conocimiento judicial de las leyes del estado de Nueva York en relación con este asunto.

La ley sobre conocimiento judicial está contenida en el artículo 398 del Código de Enjuiciamiento Civil, ed. 1933— artículo 36 de la Ley de Evidencia de 1905. No dice esa ley que las cortes de esta Isla tomarán en consideración judicialmente las leyes de los estados de la Unión.

La jurisprudencia sobre la materia ha sido bien expuesta en Jones *on Evidence,* cuarta edición, página 970, párrafo 504, como sigue:

"En algunos de los estados, las legislaturas han aprobado estatutos autorizando a las cortes para tomar conocimiento judicial de las leyes de otros estados de la Unión; y en algunas jurisdicciones se

toma tal conocimiento judicial sin autorización legislativa. En los estados donde esta práctica no está sancionada por estatuto o interpretación judicial, los estatutos y leyes de otros estados deben ser probados como cuestiones de hecho.''

En la misma obra, página 205, párrafo 118, se dice:

''Si una parte litigante desea invocar los estatutos o leyes de otro estado, debe alegarlos (*plead*) y venir preparada a probarlos...''

Esa es la regla general, pero existen excepciones y este caso está comprendido en una de ellas. Como se dice en 20 Am. Jur. 70, 72–73,

''En ausencia de un estatuto local que les requiera hacerlo, las cortes estatales rehusan, por regla general, tomar conocimiento judicial de la ley común o estatutaria de otro estado;... En aquellos casos donde un estado reconoce actos llevados a efecto de acuerdo con las leyes de otro estado, sus cortes tomarán conocimiento judicial de esos estatutos, en tanto ello sea necesario para determinar la validez de los actos que se alega· se llevaron a efecto de conformidad con las mismas.

'' ... Se ha hecho una modificación a la regla que requiere prueba de las leyes de otro estado, para darle efecto a las disposiciones de la Constitución Federal y estatutos del Congreso que exigen que se dé en cada estado absoluta fe y reconocimiento a las leyes públicas, records y procedimientos judiciales de otros estados, y prescribiendo los métodos para autenticar records judiciales. De conformidad, cuando se presenta la sentencia de otro estado y se certifica el récord en ese estado, las cortes tomarán conocimiento judicial de las leyes locales del estado de donde procede el récord...''

Parece, pues, claro que la corte erró al resolver que no podía tomar conocimiento judicial de las leyes del estado de Nueva York a los fines de resolver las cuestiones de ley que el demandado alegó en relación con la sentencia dictada en dicho estado.

Sin embargo, aunque la corte resolvió la cuestión en el sentido indicado, de hecho actuó como si hubiera tomado conocimiento judicial de las leyes de que se trata, no siendo, por tanto, su error perjudicial.

■ En cuanto al punto concreto que se discute—que la sentencia era firme como se alegó en la demanda—dichas leyes sostienen lo resuelto por la corte, ya que la sección 557 del Código de Enjuiciamiento Civil del estado de Nueva York (*Civil Practice Act*) dispone que no se puede apelar de una sentencia dictada en rebeldía del demandado, como lo fué la que se dictó en este caso, en los siguientes términos:

"El derecho a apelar subsistirá en la siguiente forma:

"1. Una parte agraviada puede apelar en un caso provisto por la ley. No puede apelar de una sentencia o resolución dictada en rebeldía a menos que el derecho a apelar de la misma esté expresamente autorizado por ley;

" . . . "

Nada en contrario nos ha sido citado por el apelante.

■ El cuarto señalamiento comprende varias cuestiones. Por él se sostiene que el secretario de la Corte Suprema de Nueva York, Condado de Nueva York, no tenía facultad para dictar sentencia sin intervención de la corte porque se trataba de una acción civil *ex delicto,* porque se cobraba una cuenta ilíquida y porque la sentencia se registró por una cantidad mayor a la alegada en la demanda.

Según el *judgment roll* introducido en evidencia, en la demanda presentada en Nueva York se alegó en resumen que demandante y demandado celebraron un contrato por escrito por virtud del cual el demandado se empleaba como agente de la demandante para vender mercancías en Puerto Rico, Santo Domingo y Venezuela por el término de un año, empezando el 15 de octubre de 1928, hasta que el contrato fuera cancelado por cualquiera de las partes, previo aviso de sesenta días; que el demandado entró a servir alrededor del 15 de octubre de 1928 y continuó hasta abril 1, 1932; que en marzo 13, 1930, la demandante autorizó al demandado, como su empleado, a cobrar para ella cuentas y dinero que se le debieran en los dichos lugares, bajo el expreso entendimiento de que el montante de todas dichas cuentas y dinero cobrados pertenecía solamente a la demandante y se le remi-

tiría inmediatamente, siendo el agente responsable a la demandante fiduciariamente; que la agencia fué terminada en abril 1, 1932 por la demandante; que entre el 13 de marzo de 1930 y el 1 de abril de 1932 el demandado cobró y recibió para la demandante $2,661.31, que nunca le ha pagado ni entregado y que usó para él en violación de la confianza en él depositada, "wrongfully and in violation of his aforesaid trust converted said moneys to his own use," como se expresa textualmente.

Alega el apelante que así se le imputó la comisión de un delito y que por tanto el secretario no tenía autoridad de ley para dictar sentencia, citando las secciones 485 y 826 del Civil Practice Act de Nueva York y la decisión en el caso de *Fayerweather* v. *Tucker,* 11 N. Y. Supp. 39, en la que se resolvió:

"Cuando una acción está predicada en ciertos hechos que se alega fueron ejecutados por el demandado con propósito fraudulento, el secretario no puede registrar sentencia en rebeldía sin la intervención de la corte, como dispone el Código de Enjuiciamiento Civil de Nueva York, párrafo 420, 1212 en algunos casos, ya que la sección 549, sub. 4, dispone que cuando existe una alegación de fraude, el demandante no puede recobrar a menos que se pruebe el fraude en el juicio."

Sin embargo, esa decisión, que evidentemente favorece al apelante, fué revocada por la del caso de *Steamship Richmond Hill Co.* v. *Seager et al.,* 52 N. Y. Supp. 985, 988. En él la Corte Suprema, División Apelativa, Primer Departamento, de Nueva York, se expresó así:

"Nada hay en el artículo 549 del Código que de alguna manera afecte esta cuestión. Lo dispuesto por la subdivisión 2 de ese artículo en cuanto a que, 'cuando se hace una alegación de esa clase, el demandante no puede obtener fallo a su favor a menos que pruebe la misma en el juicio,' simplemente se aplica sólo a un caso en que se establece una defensa y se hace necesario un juicio. Cuando existe rebeldía en las alegaciones, bien sea que la sentencia vaya a ser registrada por el secretario, o la cantidad vaya a determinarse por medio de un auto de investigación (*writ of inquiry*) o un arbitraje, o por la

corte al solicitarse sentencia, el demandado, al no contestar, admite los hechos alegados en la demanda y que el demandante tiene derecho a la sentencia solicitada. No puede haber juicio en el pleito porque no hay ninguna controversia que resolver. Al emplazar a los demandados con la demanda jurada, ellos fueron informados de la reclamación héchales por el demandante y del importe de la sentencia que se registraría en contra de ellos en caso de que no contestaran la demanda. Estando la demanda jurada, el Código no exige que se pruebe la causa de acción para que el demandante obtenga fallo a su favor, cuando los demandados están en rebeldía y no han negado las alegaciones de la demanda o han establecido una defensa; y, por la negligencia de los demandados al no contestar o excepcionar, no es posible celebrar un juicio. Si el caso fuera uno que cayera dentro del artículo 420 del Código, como consecuencia de esa rebeldía el demandante tendría derecho a que se registrara sentencia a su favor por el secretario. En el caso de que la acción no cayera dentro de ese artículo, entonces sólo podría obtener sentencia solicitándolo a la corte, pero en ninguno de los dos casos habría juicio, y la disposición de que, antes de que el demandante tenga derecho a la sentencia debe probar los hechos que el artículo 549 del Código exige se aleguen en la demanda, se refiere únicamente a un caso en que se hace necesario el juicio por la acción del demandado al interponer su defensa. Lo contrario parece haber sido resuelto en el caso de *Fayerweather* v. *Tucker*, (Sup.) 11 N. Y. Supp. 39; pero esa fué una decisión rendida en un término especial, y creemos que no fué correctamente resuelto. En algunos casos el Código exige que el demandante pruebe su causa de acción antes de que pueda obtener una sentencia en rebeldía, como en el caso de una acción de divorcio, o cuando el emplazamiento no es diligenciado formalmente; pero el hecho de que esa indicación especial es necesaria, prueba que, cuando no existe ese requisito, tal prueba no es esencial.''

■ Admite el apelante que esa decisión le es adversa, pero insiste en su proposición alegando que no se resolvió por ella el punto de si la reclamación era o no líquida y cita en su apoyo el caso de *In re Scharmann*, 63 N. Y. Supp. 267, en el que se decidió:

''El Código de Enjuiciamiento Civil, sección 420–1212, que dispone que, en acciones por violación de un contrato expreso, si el demandado no ha comparecido y el demandante ha probado el diligenciado del emplazamiento, etc., el Secretario debe registrar sen-

tencia final a favor del demandante—no autoriza al Secretario a registrar sentencia a favor del demandante en una acción de daños ilíquidos, sin que previamente se solicite de la corte.''

La cita no tiene el alcance que le atribuye el apelante porque se refiere a daños y perjuicios mientras que aquí se trata del reintegro de sumas cobradas por el demandado para la demandante de las cuales se apoderó en violación del contrato existente entre ambos.

■ Resta considerar la cuestión del registro de la sentencia por cantidad mayor que la alegada en la demanda, según sostiene el apelante. Tampoco tiene razón, a nuestro juicio.

La propia sección de la ley de Nueva York—481 del Civil Practice Act—por él invocada es autoridad suficiente para que el secretario de la corte de Nueva York registrara la sentencia en la forma en que lo hizo, esto es, con intereses. Conocemos la sentencia. La ley es como sigue:

''Una sentencia por una cantidad de dinero dictada por una corte de récord o no de récord, o una sentencia dictada por una corte de récord ordenando el pago de dinero, devenga intereses desde la fecha en que es registrada. Pero cuando una sentencia ordena que dinero pagado será reembolsado o reintegrado, la orden incluye intereses desde la fecha en que el dinero fué pagado, a menos que se indique lo contrario.''

■ El cuarto error no fué, pues, cometido. Por el quinto se sostiene que la corte erró al resolver que la prueba demostró el emplazamiento personal del demandado en Nueva York.

La evidencia sobre ese extremo fué contradictoria y como al resolver el conflicto no se ha demostrado que la corte de distrito actuara movida por pasión, prejuicio o parcialidad o que cometiera manifiesto error, debe quedar en pie su apreciación.

■ Por el sexto error se levanta la cuestión relativa a la nulidad del emplazamiento por haberse practicado por la parte realmente interesada en el pleito. El emplazamiento

personal del demandado lo hizo Bernard Sharp, presidente y cerebro director de los negocios de la corporación demandante, miembro de su junta de directores y accionista de la misma. Sobre ello no hay duda alguna, lo declaró el mismo Sharp en Nueva York; pero eso no obstante, según la jurisprudencia de dicho estado, es válido, porque Sharp no era una parte en el pleito, en el sentido que la palabra "parte" se usa en la ley.

"La sección 220 del Civil Practice Act, que dispone 'El emplazamiento puede ser diligenciado por cualquier persona de 18 años de edad o más, que no sea parte en la acción,' no excluye, en nuestra opinión, su diligenciamiento por un oficial o director de una corporación demandante," resolvió la Corte Suprema de Nueva York, en *Outdoor Supply Co.* v. *Westhome Sec. Corporation,* 249 N. Y. Supp. 571, y continuó: "Como se dijo en *Woods* v. *DeFiganiere,* 24 N. Y. Super. Ct. 607, a la página 611, 'Todas las disposiciones del Código, por regla general, cuando se refieren a partes en la acción, significan solamente las partes en el récord, ya sean partes nominales o las verdaderas partes interesadas.' Esta decisión fué citada con aprobación en *People* v. *Mutual Gas Light Co. of Brooklyn,* 74 N. Y. 434, a la página 435. En este último, la Corte de Apelaciones, al determinar el significado de la palabra 'parte', en relación con interrogatorios (*examinations*) antes del juicio, dijo: 'la palabra "parte", como se usa en éste y estatutos similares anteriores, tiene un significado inconfundible. Significa un demandante o demandado, y no puede extenderse a los oficiales, sirvientes, agentes o empleados de las partes, sean esas partes corporaciones o personas naturales.' "

Por el séptimo señalamiento se alega que la corte erró al sostener en general la validez de los procedimientos habidos en Nueva York.

El propio apelante dice en su alegato que constituye una recopilación de lo alegado en los otros señalamientos. Siendo

ello así y en vista de lo que hemos ya resuelto, no precisa discutirlo.

El último señalamiento, o sea el octavo, se refiere al error atribuído a la corte sentenciadora al fijar el punto de partida para la computación de intereses y el tipo de éstos.

Como sabemos la corte fijó el interés legal—seis por ciento anual—a partir de septiembre 17, 1932, fecha de la sentencia de Nueva York, y el apelante sostiene que sólo pudo fijar dicho interés a partir de la fecha de la radicación de la demanda en esta Isla, agosto 22, 1939.

La sentencia de Nueva York se limita a ordenar el pago de intereses sin determinar el tipo. El apelante al argumentar el error en su alegato se concreta a exponer el hecho y su criterio, sin cita de autoridades. La parte apelada en el suyo sólo dice: "El octavo error no lo discutiremos por entender que carece de importancia alguna, a los fines de esta apelación."

Ante los hechos, parece lógica la actitud asumida por la corte sentenciadora. La obligación de pagar intereses existía y su cumplimiento fué reclamado en esta Isla. En la súplica de la demanda se pidió que se fijara el seis por ciento anual desde septiembre 17, 1932, y la corte así lo hizo en su sentencia. Dicho tipo no sólo es el legal en Puerto Rico si que en Nueva York. Sección 370, artículo 25, "General Business Law of 1909," "Thompson's *Laws of New York,*" 1939, parte 1, página 1076. No hubo error.

*Por virtud de todo lo expuesto, debe declararse no haber lugar al recurso y confirmarse la sentencia.*

El Juez Asociado Sr. De Jesús no intervino.